IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEBORAH JENOTT, ) <br> ) <br> Plaintiff, ) Case No. CV08-322-S-EJL <br> ) <br> vs. ) MEMORANDUM ORDER <br> ) <br> SAINT ALPHONSUS REGIONAL MEDICAL ) <br> CENTER, et al, ) <br> ) <br> Defendants. ) <br> _____ ) | |

Plaintiff Deborah Jenott, formerly employed as a psychiatric technician by Saint Alphonsus Regional Medical Center ("SACRM"), initiated this action against SACRM alleging gender discrimination, retaliation and hostile work environment under Title VII of the Civil Rights Act of 1964 and the Idaho Human Rights Act. The Plaintiff also alleges state law claims against SACRM for wrongful termination and negligent hiring, supervision and retention. Defendant SACRM has moved for summary judgment on all the Plaintiff's causes of action.[1] Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without a hearing.

---

[1] Initially, Plaintiff asserted an age discrimination claim against SARMC and brought causes of action against three individual SARMC employees, Sherry Parks, Caroline Barta and Dennis Wedman, for tortious interference with contract, tortious interference with prospective economic advantage and intentional infliction of emotional distress. However, Plaintiff has decided "not to contest the motion for summary judgment as to these claims," (Pl.'s Mem. in Opp'n at 20), and therefore summary judgment will be entered in favor of Defendants on these four causes of action.

MEMORANDUM ORDER - Page 1
09ORDERS\JENOTT_SJ.WPD

**Background**

Plaintiff was continuously employed by Defendant SARMC as a psychiatric technician from September of 1994 through February of 2007. Plaintiff worked in the Behavioral Health Unit ("BHU") of SARMC. The BHU provides in-patient treatment, out-patient treatment, and a full range of behavioral health services for mentally and emotionally ill patients.

In 2005, Sherry Parks was hired as Director of the BHU. Caroline Barta worked as a Nurse Manager in the BHU, supervising the Plaintiff and reporting to Ms. Parks. Mia Saffran was employed as a psychiatric technician at the BHU and was Plaintiff's co-worker.

Plaintiff alleges that over the years she was employed at the BHU, Ms. Barta, Ms. Parks and several other individuals participated in sexually charged and inappropriate behaviors. Although the alleged inappropriate behavior was not directed at Plaintiff, she alleges that "employees that participated received favored status with corresponding benefits from management, such as promotions, access to management, and protection from investigation and discipline." (Statement of Disputed Facts at 2).

In October of 2006, the Plaintiff sent an anonymous letter to Dennis Wedman, SARMC's Integrity Officer, to complain about the preferential treatment afforded to Ms. Saffran by Ms. Barta. Ms. Saffran was asking other employees at the BHU to donate their personal leave to her so that she could take time off to care for her sick brother. The Plaintiff believed that Ms. Saffran's solicitations violated SARMC's leave policy. The Plaintiff also made two calls to SARMC's Integrity Hotline.

In November of 2006, Ms. Parks called the Plaintiff into her office to discuss the letter Plaintiff had written to Mr. Wedman. Plaintiff reiterated her concerns that Ms. Barta was giving preferential treatment to certain employees. In addition to allowing Ms. Saffran to solicit leave, the Plaintiff believed that Ms. Barta had inappropriately promoted Debra Smith, a friend of Ms. Barta.

On December 15, 2006, several BHU employees attended a Christmas party. The next day, an anonymous letter was posted at the BHU complaining about a "lap dance" that allegedly took place at the Christmas party. On December 23, 2006, Ms. Saffran wrote an email addressed to Ms. Barta and to Ms. Parks wherein she suggested, among other things,

that they access the Plaintiff's email account, as well as the accounts of two other employees, in order to ascertain who wrote the "lap dance" letter. It is undisputed that the Plaintiff did not attend the Christmas party and did not write or post the anonymous letter regarding the "lap dance."

Approximately one month later, the Plaintiff came into the possession of Ms. Saffran's email. On January 25, 2007, the Plaintiff wrote Ms. Barta and Ms. Parks, asking if her email was being accessed. Ms. Parks and Ms. Barta questioned how the Plaintiff had obtained Ms. Saffran's email.

On January 7, 2007, the Plaintiff and Ms. Saffran became involved in an altercation in the dining room at BHU. On January 31, 2007, Ms. Barta issued Plaintiff a written Disciplinary Action based on her adversarial relationship with Ms. Saffran. The Disciplinary Action stated, among other things: "The behavior must stop, and all discussion of the peer in question and this disciplinary action must stop." (Barta Aff., Ex. C). Later that day, Plaintiff told other employees about the disciplinary action.

On February 13, 2007, Ms. Barta telephoned Plaintiff at home and informed her that she was terminated from her employment for speaking to other employees about the disciplinary action. Plaintiff was replaced by John Grissom, a male. This lawsuit followed.

## Standards

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Adams v. Synthes Spine Co., 298 F.3d 1114, 1116-17 (9th Cir. 2002). "The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party. . . , [and] [i]f conflicting inferences may be drawn from the facts, the case must go to the jury." LaLonde v. County of Riverside, 204 F.3d 947, 959 (9th Cir.2000).

When analyzing the viability of this state law claim, the Court is mindful that it must apply the substantive law of Idaho, as interpreted by the Idaho Supreme Court. See Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 920 (9th Cir.1988). "[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." Air-Sea Forwarders, Inc. v. Air Asia

Co., 880 F.2d 176, 186 (9th Cir. 1989), cert. denied, 493 U.S. 1058 (1990). In this regard, the federal court must follow an intermediate state court decision unless other persuasive authority convinces the federal court that the state supreme court would decide otherwise. Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988).

**Discussion**

**1. Title VII Claims[2]**

**a. Gender Discrimination**

The Plaintiff first alleges that the termination of her employment was due to gender discrimination. The applicable framework for analyzing a motion for summary judgment on a gender discrimination claim is set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, Plaintiff first must establish a prima facie case of discrimination. Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. Id. at 802.

Once the Plaintiff has established this prima facie case, the McDonnell Douglas burden-shifting framework applies. SARMC must then come forward with a legitimate, nondiscriminatory reason for the employment decision. Surrell v. California Water Service Co., 518 F.3d 1097, 1106 (9th Cir. 2008). Once SARMC justifies its employment decision, the "the presumption of discrimination drops out of the picture, and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required under Fed.R.Civ.P. 56(c)." Id. To survive summary judgment, Plaintiff must introduce evidence sufficient to raise a genuine issue of material fact that "the employer's proffered nondiscriminatory reason is merely a pretext for discrimination." Id.

---

[2] The Plaintiff brings her claims based on gender discrimination and retaliation under both Title VII and the Idaho Human Rights Act. However, the analysis of a violation of the Idaho Human Rights Act is the same as under Title VII. See e.g., Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004). "Therefore, [the Court's] analysis of the Title VII claims also disposes of the Idaho state claims." Id.; see also Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 n.4 (9th Cir.1994).

There is no real dispute among the parties that Plaintiff has made out a prima facie case. SARMC, however, has come forward with a legitimate, nondiscriminatory business justification for firing the Plaintiff. SARMC asserts that the Plaintiff was terminated because she continued to be involved in an adversarial relationship with Ms. Saffran, and when instructed by the written Disciplinary Action not to discuss the matter with employees she violated the directive and discussed the disciplinary action with co-workers the very same day.

Although the Plaintiff questions the justification presented by SARMC, the Plaintiff has admitted that with regard to Ms. Saffran: "we have an adversarial relationship." (Barta Aff., Ex. B). There also is no doubt that the written Disciplinary Action stated: "The behavior must stop, and all discussion of the peer in question and this disciplinary action must stop." (Barta Aff., Ex. C). The Plaintiff indicated she had read this directive when she wrote on the Disciplinary Action form, "I do not agree with this." (Id.). Finally, there is no dispute that Plaintiff did in fact discuss the disciplinary action with co-workers. SARMC, then, has justified its employment decision with a legitimate, nondiscriminatory reason, and "the presumption of discrimination drops out of the picture." Surrell, 518 F.3d at 1106.

Instead of submitting evidence to raise a genuine issue of material fact that "the employer's proffered nondiscriminatory reason is merely a pretext for discrimination," id., Plaintiff contends that she "is not required to produce any additional evidence of discrimination beyond her prima facie case," (Pl.'s Mem in Opp'n at 3). In making this argument, the Plaintiff relies on the Ninth Circuit case of Chuang v. Univ. of Cal. Davis Bd. of Trustees, 225 F.3d 1115 (9th Cir. 2000).

In Chuang, the Ninth Circuit observed that "a disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." Id. at 1127. In that case, the Ninth Circuit concluded "the evidence constituting [plaintiff's] prima facie case is sufficiently strong to raise a genuine issue of material fact regarding the truth of [defendant's] proffered nondiscriminatory reasons." This was because the plaintiff, who was an extraordinarily

qualified professor, was the *"only* full-time faculty member in his department" not to be granted tenure and was the "*only* non-Caucasian." Id. (emphasis in original).

Plaintiff's prima facie case does not present the same compelling facts as the Chuang case. On the contrary, the Plaintiffs immediate supervisor and the director of BHU are both females, as are the majority of employees at BHU. Therefore, unlike Chuang there is no inherent bias displayed in the make-up of the BHU employment pool. The totality of Plaintiff's prima facie evidence consists of the fact that she is a female and the person hired to fill her position is a less qualified male. If this were sufficient to raise a genuine issue of material fact of gender discrimination, then the McDonnell Douglas burden-shifting framework would be rendered meaningless. And the Ninth Circuit clearly has indicated otherwise. See, e.g., Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir.1994) (explaining that "in those cases where the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination under McDonnell Douglas, plaintiff has failed to raise a triable issue of fact").

Because Plaintiff has failed to introduce evidence sufficient to raise a genuine issue of material fact that "the employer's proffered nondiscriminatory reason is merely a pretext for discrimination," summary judgment must be granted in favor of SARMC on the gender discrimination claim. Surrell, 518 F.3d at 1106; see also Wallis, 26 F.3d at 890 (explaining that "a plaintiff cannot defeat summary judgment simply by making out a prima facie case.").

**b. Retaliation**

The Plaintiff asserts that her termination was in retaliation for "voic[ing] her complaints about the unprofessional and ever increasing hostile working environment around her." (Pl.'s Mem. in Opp'n at 14). To establish a prima facie case of retaliation, Plaintiff must prove "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two." Surrell, 518 F.3d at 1108.

SARMC challenges the protected activity prong of Plaintiff's prima facie case and contends that Plaintiff never raised any concerns of a hostile work environment and/or gender discrimination with SARMC's management. In response, Plaintiff points to the letter she sent to Mr. Wedman in October of 2006. Plaintiff argues that in the letter she raised "a number of concerns." (Pl.'s Mem. in Opp'n at 7).

While that may be true, a review of the letter demonstrates that none of those concerns dealt with protected activities under Title VII. Instead, the letter shows that Plaintiff expressed concerns about possible violations of SARMC's leave policy and Ms. Barta's supervision, and not with any Title VII matters. (Stark Aff. ¶ 10, Ex. E, Ex. 7).

Plaintiff's deposition testimony and affidavit further demonstrate that the letter and subsequent calls to the Integrity Hotline were an effort to raise concerns about perceived violations of SARMC's leave policies. (See, e.g. Starks Aff. ¶ 2, Ex. A (Jenott deposition), p.45-48, p. 54-58; Aff. Jenott ¶¶ 7-11).  Plaintiff states, for instance, that she formulated the letter after "doing research, policy researches about how PTO donations could be utilized and how sick/disability time could be utilized," and that the telephone calls "[m]uch like the letter I wrote, outlined those concerns about the use of the sick/disability benefit." (Starks Aff. ¶ 2, Ex. A (Jenott deposition), p. 54, p.58). She also answers in response to a question of whether she had ever talked to Human Resources "about what you considered to be incidents of a sexual nature," that: "I don't think I individually recounted these incidents." (Id. at 106).

Because Plaintiff's letter and Integrity Hotline calls questioned SARMC's internal policies and not Title VII matters, they do not demonstrate that Plaintiff "engaged in a protected activity." See, e.g. Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir.1988) (explaining that the "opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation'); Silver v. KCA, Inc., 586 F.2d 138, 142 (9th Cir. 1978) ( "[U]nder the clear language of the 'opposition' clause, a case of retaliation has not been made out unless the 'retaliation' relates to the employee's opposition to a [Title VII] violation.").

Plaintiff also points to the "lap dance" letter and claims that she was terminated because of its posting in the BHU. Plaintiff makes this argument despite the fact that she did not attend the Christmas party, did not write the "lap dance" letter, and did not post the letter in the BHU. Apparently, Plaintiff contends that Ms. Parks and Ms. Barta perceived her as responsible for the "lap dance" letter, even though she was not, and terminated her employment in retaliation.

To begin with, the Court is not necessarily convinced that liability under Title VII attaches to an employer's actions based on a mis-perception rather than actual fact. But see Fogelman v. Mercy Hospital, Inc., 283 F.3d 561, 571-72 (3rd Cir. 1996). However, even if Plaintiff's "perception theory" is viable, there is no competent evidence sufficient to raise a genuine issue of material fact that Ms. Parks and Ms. Barta perceived the Plaintiff as the person responsible for the "lap dance" letter. Plaintiff's only source of evidence on this issue is the email composed by Ms. Saffran and sent to Ms. Parks and Ms. Barta. (Stark Aff. ¶ 10, Ex. E, Ex. 15). However, Ms. Saffran is a SARMC employee and not a supervisor, and is the co-worker involved in the "adversarial relationship" with Plaintiff. There is no indication in the record that Ms. Parks and/or Ms. Barta shared Ms. Saffran's suspicion that the Plaintiff, or the other two co-workers cited in Ms. Saffran's email, might have been responsible for the "lap dance" letter.

In this regard, Plaintiff's retaliation claim fails for the same reasons expressed in the Ninth Circuit case Kurtz v. Caesars Entertainment, Inc., No. 06-15844, 2008 WL 410360 (9th Cir. 2008). In that case, like this one, the plaintiff argued that "while she may not have actually engaged in protected activity, her supervisor, and her supervisor's superior who terminated her, mistakenly perceived her to have engaged in protected activity." Id. at *1. Without expressly endorsing the "perception theory," the Ninth Circuit rejected her claim because there was "no factual basis on which her supervisor could have perceived that she was engaged in protected activity." Id. The same is true here, Plaintiff did not attend the Christmas party to witness the alleged "lap dance" and consequently lacked the personal knowledge to write any letter concerning the event. Unsurprisingly, then, Plaintiff has submitted no competent evidence to show that the Plaintiff's supervisors, Ms. Parks and Ms. Barta, perceived her as responsible for the "lap dance" letter.

Because Plaintiff has failed to raised a genuine issue of material fact that she engaged in a protected activity, the Court must grant summary judgment in favor of SARMC on the retaliation claim.

**c. Hostile Work Environment**

The Plaintiff alleges she was subjected to a hostile work environment in violation of Title VII. To establish a prima facie case for a hostile-work environment claim, Plaintiff must show that (1) the defendant subjected her to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Surrell, 518 F.3d at 1108.

In an effort to make the necessary showing, Plaintiff recounts several incidents that occurred during her employment. It is undisputed that none of the objectionable conduct was aimed at Plaintiff. And in many instances, Plaintiff did not personally observe the conduct. The incidents include the following:

> In the early part of 2004, certain BHU employees filled specimen containers with varying levels of shampoo, suggesting the virility of various doctors;
>
> In early 2005, a BHU female employee worn a fake buttocks at a retirement party held offsite, that the Plaintiff did not attend;
>
> A BHU female employee brought a life size inflatable, anatomically correct female doll to a psychiatrist's birthday party;
>
> A BHU female employee wore a pair of large fake breasts on several occasions;
>
> A fake People Magazine cover which include a photograph of a person wearing fake buttocks was posted in the work area;
>
> Several BHU employees used obscene language and discussed their dating/sexual activities;
>
> Inappropriate activities, including the "lap dance" that Plaintiff believed occurred at the 2006 Christmas party, that the Plaintiff did not attend.

Title VII "forbids only behavior so objectively offensive as to alter the conditions of the victim's employment." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81(1998). The United States Supreme Court has "always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace--such as male-on-male horseplay or intersexual flirtation--for discriminatory 'conditions of employment.'" Id. "Hence, a recurring point in [the Supreme Court] opinions is that simple teasing, offhand comments, and isolated incidents (unless

extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001).

To determine whether the above conduct was sufficiently severe or pervasive to violate Title VII, the Court must look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. The incidents listed above do not appear to the Court as "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment."

Significantly, the incidents occurred over a two and half year period and were never aimed at the Plaintiff. The incident involving the specimen containers occurred in early 2004 and was not repeated. See Galdamez v. Potter, 415 F.3d 1015, 1023 (9th Cir. 2005) ("The required severity of the conduct varies inversely with its pervasiveness and frequency."). The incidents involving the "fake buttocks" and "lap dance" occurred off-site, after work hours and without the Plaintiff in attendance. Similarly, the incident involving the "anatomically correct female doll" occurred during a birthday party and not in the workplace. Finally, while the incidents involving the "fake breasts" and the discussions about an employee's sex life might be considered offensive, these matters could not reasonably be considered "physically threatening or humiliating" so as to "unreasonably interfere with an employee's work performance." Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003).

The Court's analysis in the present case is informed by the Ninth Circuit's reasoning in the Vasquez case. There, the Ninth Circuit observed it had found no Title VII liability when it "held that, while the supervisor's language was offensive, his conduct was not severe or pervasive enough to unreasonably interfere with the plaintiff's employment." 349 F.3d 634 at 644 (citing Kortan v. California Youth Auth., 217 F.3d 1104 (9th Cir. 2000) where there was no Title VII liability when a "supervisor called female employees 'castrating bitches,' 'Madonnas,' or 'Regina' on several occasions in plaintiff's presence; the supervisor called the plaintiff 'Medea'; the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor"). In an effort to outline the difference between a hostile work environment and a merely difficult or offensive

workplace, the Vasquez court noted that the Ninth Circuit previously had "held that no reasonable jury could have found a hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino." Id. at 643 (citing Sanchez v. City of Santa Ana, 936 F.2d 1027 (9th Cir.1990)). To demonstrate what might constitute a hostile work environment the Vasquez court cited Nichols v. Azteca Restaurant Enterprises, Inc, 256 F.3d 864 (9th Cir.2001), wherein "a male employee of the restaurant was subjected to a relentless campaign of insults, name-calling, vulgarities, and taunts of 'faggot' and 'fucking female whore' by male co-workers and supervisors at least once a week and often several times a day." Id.

The application of these principles is further demonstrated by the Ninth Circuit's decision in Candelore v. Clark County Sanitation Dist., 975 F.2d 588 (9th Cir.1992), a case directly on point. There, like here, the Ninth Circuit noted that "[m]uch of the evidence relied on by [plaintiff] in establishing the [objectionable behavior] involved conduct away from the workplace or outside business hours." Id. at 590. And further, the Candelore court stated that "a co-worker's romantic involvement with a supervisor does not by itself create a hostile work environment." Id. And finally, as here, the Candelore court concluded that, "the isolated incidents of sexual horseplay alleged by [plaintiff] took place over a period of years and were not so egregious as to render [her] work environment 'hostile.'" Id.

Having considered the applicable case law, the Court finds that the Plaintiff's case falls well short of demonstrating what is necessary to raise a genuine issue of material fact that she was subjected to a hostile work environment so as to alter the conditions of her employment. See id.

Furthermore, Plaintiff's claim is barred by SARMC's affirmative defense. An employer can sustain an affirmative defense if it shows that (a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1177 (9th Cir. 2003).

Here, it is undisputed that SARMC has adopted and implemented an anti-harassment policy, and has established procedures for reporting harassment. (Aff. Wedman ¶¶ 4-10). As noted above, the evidence shows that Plaintiff never raised any Title VII based concerns with her employer. Therefore, Plaintiff's claim is barred for this reason also. Holly D., 339 F.3d at 117-79.

For all the above reasons, summary judgment will be entered in favor of SARMC on Plaintiff' hostile work environment cause of action.

**2. State Law Claims**

**a. Wrongful Termination**

The Plaintiff was employed by SARMC as at "at will" employee. "At-will" generally means that "either party may terminate the relationship at any time for any reason without incurring liability." Mitchell v. Zilog, Inc., 874 P.2d 520, 523 (Idaho 1994).  However, an exception to this rule allows an employee to claim damages for wrongful discharge when the motivation for the firing contravenes public policy. Hummer v. Evans, 923 P.2d 981, 986 (Idaho 1996). "[T]he public policy exception has been held to protect employees who refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights or privileges." Sorensen v. Comm Tek, Inc., 799 P.2d 70, 74 (Idaho 1990).

The Plaintiff contends that she fits within the public policy exception because she was "terminated on the basis of gender discrimination . . ., or in retaliation for making a complaint about sexual harassment." (Pl.'s Mem. in Opp'n at 16). However, as discussed above, Plaintiff has failed to raise a genuine issue of material fact sufficient to avoid summary judgment on both her gender discrimination claim and her retaliation claim. Accordingly, her wrongful discharge claim fails for the same reason.

**b. Negligent Hiring, Supervision and Retention**

The Plaintiff alleges that SARMC engaged in negligent hiring, supervision and retention. Plaintiff concedes "that many of the factual allegation in this matter are interwined with the allegations in support of the Title VII and the Idaho Human Rights Act claims." (Pl.'s Mem in Opp'n at 21). As such, the Plaintiff's negligent hiring, supervision and retention claim is preempted by operation of Title VII and/or the Idaho Human Rights Act.

See, e.g., Perry v. FTData, Inc., 198 F. Supp.2d 699, 707-08 (D. Md. 2002); Paquin v. MBNA Marketing Systems, Inc., 195 F. Supp.2d 209, 210 (D. Me. 2002).

## ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that Defendants' Motion for Summary Judgment (docket no 23) is **GRANTED** and that all the claims asserted in Plaintiff's First Amended Complaint are **DISMISSED** with prejudice. **IT IS FURTHER ORDERED** that this case is **DISMISSED** in its entirety.

DATED: **December 23, 2009**

Honorable Edward J. Lodge
U. S. District Judge